**UNITED STATES of America, Respondent,**

v.

**Ramon Alfredo ABREU, Petitioner.**

**C.R. No. 90–020P.**

United States District Court, D. Rhode Island.

Oct. 11, 1996.

uralization Service ("INS") to compel the Attorney General, through the INS, to deport Petitioner. Petitioner is currently serving a twenty-three year prison sentence. The United States objects to Petitioner's petition for a writ of mandamus. Petitioner asserts three arguments to support his petition. For the reasons set forth below, I find that Petitioner's arguments are without merit. Accordingly, I deny his petition.

## BACKGROUND

In 1990, this Court convicted Petitioner of various criminal counts of cocaine possession and distribution, and firearms possession. Accordingly, this Court sentenced Petitioner to twenty-three years imprisonment and nine years supervised release. The Court also ordered deportation of Petitioner in accordance with 18 U.S.C. § 3583(d)(3). Petitioner appealed his conviction to the First Circuit, which sustained the cocaine possession and distribution convictions, as well as the firearms possession convictions, but vacated Petitioner's conspiracy conviction and sentence. *United States v. Abreu,* 952 F.2d 1458 (1st Cir.1992). Shortly thereafter, in 1992, Petitioner petitioned this Court for a writ of mandamus to compel the Attorney General, through the INS, to conduct deportation hearings as soon as possible rather than await completion of Petitioner's prison sentence. This Court granted Petitioner's request, issuing a writ of mandamus requiring that deportation hearings be conducted as expeditiously as possible. *Abreu v. United States,* 796 F.Supp. 50 (D.R.I.1992). The Court noted, however, that it lacked the authority to order Petitioner's deportation. *Id.* at 53. Pursuant to the Court's order, in October 1992, Immigration Judge O. John Brahn issued an Order of Deportation.

Petitioner asks this Court once again to issue a writ of mandamus against the Attorney General and the INS. This time, Petitioner asks the Court to compel the Attorney General, through the INS, to deport Petitioner immediately, prior to completion of his prison sentence. Petitioner sets forth three arguments to support his petition. First, he asserts that 8 U.S.C. § 1252(c), as amended by the Antiterrorism and Effective Death

Ramon Alfredo Abreu, Bradford, PA, pro se.

Kenneth P. Madden, U.S. Attorney, Providence, RI, for Respondent.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Ramon Alfredo Abreu ("Petitioner") requests that this Court issue a writ of mandamus against the Attorney General of the United States and the Immigration and Nat-

Penalty Act of 1996 ("the Act of 1996"), mandates his immediate deportation. Second, he argues that 8 U.S.C. § 1252(h), as amended by the Act of 1996, requires that the Attorney General deport him immediately. Finally, he asserts that he is entitled to relief under the Administrative Procedure Act. I discuss each of Petitioner's arguments in turn.

### DISCUSSION

*1. 8 U.S.C. § 1252(c) Does Not Mandate Petitioner's Immediate Deportation*

Petitioner argues that 8 U.S.C. § 1252(c), as amended by the Act of 1996, mandates that the Attorney General deport Petitioner immediately. In order to understand why Petitioner's argument has no merit, it is important to examine § 1252(c) both prior to and after the Act of 1996. Prior to the Act of 1996, § 1252(c) read as follows:

(c) When a final order of deportation under the administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or if judicial review is had, from the date of the final order of the court, within which to effect the alien's departure from the United States ... *For the purposes of this section an order of deportation heretofore or hereafter entered against an alien in legal detention or confinement, other than under the immigration process, shall be considered as being made as of the moment he is released from such detention or confinement, and not prior thereto.*

8 U.S.C. § 1252(c) (1988) [emphasis added]. Thus, under this provision, the Attorney General has no authority to deport criminal aliens until after they have served their entire sentences.

Petitioner argues that the Act of 1996 authorizes the Attorney General to deport aliens who have committed certain crimes prior to completion of their sentences. The Act of 1996 adds the following to § 1252(c):

(c) Final order of deportation; place of detention

(1) Subject to paragraph (2) ... [the former § 1252(c) as set forth above].

(2) When a final order of deportation under administrative process is made against any alien who is deportable by reason of having committed a criminal offense in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are covered by section 1251(a)(2)(A)(i) of this title, the Attorney General shall have 30 days from the date of the order within which to effect the alien's departure from the United States. The Attorney General shall have the sole and unreviewable discretion to waive the foregoing provision for aliens who are cooperating with law enforcement authorities for purposes of national security.

8 U.S.C. § 1252(c) (1996). The 1996 amendments expedites the deportation of those aliens who have committed particular crimes.

Petitioner argues that he was found deportable in accordance with the provisions set forth in § 1252(c)(2), and accordingly, the Attorney General must deport him within 30 days. But in so arguing, Petitioner ignores the last sentence of § 1252(c)(1), which specifically states that the Attorney General has no authority to deport those aliens who are serving prison sentences. It is a basic tenant of statutory construction that a statutory provision must be read in its entirety. "A statute is passed as a whole and not in parts or sections ... Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole." 2A Sutherland Statutory Construction § 46.05 at 103. Therefore, § 1252(c)(2) cannot be read exclusive of the requirement set forth in § 1252(c)(1) that those aliens convicted of a crime must serve out their sentences before being deported.

Further, "an amendatory act is not to be construed to change the original act or section further than expressly declared or necessarily implied." 1A Sutherland Statutory Construction § 22.30 at 267. Without the express intent of Congress, the Act of 1996, which added (c)(2), cannot be construed as changing the § 1252(c)'s overall requirement

that convicted aliens serve their entire sentences prior to deportation. In passing the Act of 1996, Congress evinced no such intent. Rather, the legislative history of the Act of 1996 reveals that Congress intended that convicted aliens serve their entire sentences prior to deportation. For example, during her report to House of Representatives on the Act of 1996, Congressional Representative Pryce of Ohio reported that the Act provided for "improved procedures for deporting criminal aliens ... which allow judges to order deportation of aliens convicted of Federal crimes *at the completion of their sentence.*" 142 Cong.Rec. H3599–01, *H3599.

In sum, Petitioner's contention that the Act of 1996 modifies § 1252(c) so as to mandate his immediate deportation is inconsistent with a fair reading of § 1252(c) as well as Congress' intent in passing the Act of 1996. A fair reading of § 1252(c) requires application of the last sentence of § 1252(c)(1), stating that "an order of deportation ... entered against an alien in legal detention or confinement, other than under the immigration process, shall be considered as being made as of the moment he is released from such confinement ...," to both § 1252(c)(1) and (c)(2). Therefore, I adopt the Government's interpretation of § 1252(c)(2), and find that "subsection (c)(2) is applicable to certain aliens ... who are now in the custody of the Attorney General, on bond, or on conditional parole due solely to their particular alien status." Government's Objection to Petition for Writ of Mandamus, at 5. Thus, § 1252(c)(2) applies to those aliens who have committed certain crimes, have served their sentences, and are awaiting deportation. Under § 1252(c)(2), the Attorney General has only thirty days rather than six months to deport these aliens.

### 2. *§ 1252(h)(2) Does Not Require Petitioner's Immediate Deportation*

■ Petitioner also argues that under § 1252(h), as amended by the Act of 1996, he is entitled to deportation prior to completion of his prison sentence. Prior to the Act of 1996, § 1252(h) read as follows:

(h) Service of prison sentence prior to deportation.

An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by release of the alien from confinement. Parole, supervised release, probation, or possibility of rearrest or further confinement, in respect of the same offense shall not be a ground for deferral of deportation.

8 U.S.C. § 1252(h) (1988). The Act of 1996 amended § 1252(h) by adding a second paragraph:

(h) Deportation of imprisoned aliens

(1) Except as provided in paragraph (2) ... [same provision as above].

(2) The Attorney General is authorized to deport an alien in accordance with applicable procedures under this chapter prior to the completion of a sentence of imprisonment—

(A) in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (i) the alien is confined pursuant to a final conviction for a nonviolent offense (other than alien smuggling), and (ii) such deportation is appropriate and in the best interest of the United States ...

8 U.S.C. § 1252(h) (1996). Petitioner argues that he fulfills all the requirements of § 1252(h)(2), and, therefore, he is entitled to deportation. But in so arguing, Petitioner fails to recognize the scope of discretion § 1252(h)(2) grants to the Attorney General. Moreover, he does not allege that the Attorney General has exceeded the scope of her discretion in any way.

I addressed an issue which raises similar legal concerns in 1992 when Petitioner, along with two other incarcerated criminal aliens, petitioned this Court for a writ of mandamus to compel the Attorney General and the INS to immediately conduct deportation hearings rather than await the aliens' release date. *Abreu v. United States,* 796 F.Supp. 50 (D.R.I.1992). In that case, I held that a writ of mandamus was appropriate. In so holding, however, I noted the distinction between the *Abreu* petitioners' request for deporta-

tion hearings versus a request for actual deportation. Recognizing that the *Abreu* petitioners unquestionably wanted to be deported prior to completion of their respective sentences, I stated:

> This the Court cannot and would not order. *See,* 8 U.S.C. § 1252(h). However, in order to be deported "as soon as possible" (i.e., after completing their sentences), the INS must hold deportation hearings sometime between conviction and the date of release.

*Id.* at 53. I held that the *Abreu* petitioners were entitled to a writ of mandamus because § 1252(i), upon which the *Abreu* petitioners relied, required the Attorney General to begin deportation hearings as soon as possible after the date of conviction.[1]

■ Although the situation presented here is significantly different from that presented in *Abreu, supra,* the legal analysis is the same. Therefore, I quote at length the applicable law from the earlier *Abreu* decision. I begin by looking at the Mandamus and Venue Act:

> Congress passed the Mandamus and Venue Act, 28 U.S.C. § 1361, in 1962. The Act provides:
>
>> The district court shall have original jurisdiction of any action in the nature of mandamus to compel any officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.
>>
>> * * * * * *
>
> Mandamus may issue when there exists a ministerial, clearly defined, and peremptory duty on the part of the defendant to do the act in question, and no other adequate remedy is available. *Cervoni v. Secretary of HEW,* 581 F.2d 1010, 1019 (1st Cir. 1978).

*Id.* at 53–54. Although federal courts may not issue writs of mandamus to control official discretion, the mere fact that an official's responsibilities are discretionary in some respects does not preclude a court from issuing

a writ of mandamus. In fact, the Supreme Court recognized that:

> the [official's] duty may be discretionary within limits. He cannot transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them ... [The] extent [of official discretion] and the scope of judicial action in limiting it depend upon a proper interpretation of the particular statute and the congressional purpose.

*Work v. United States ex rel. Rives,* 267 U.S. 175, 177–78, 45 S.Ct. 252, 252–53, 69 L.Ed. 561 (1925). " 'In other words, even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated.' " *Abreu, supra,* at 54, *quoting, Davis Assocs., Inc. v. Secretary, Dep't of Housing and Urban Dev.,* 498 F.2d 385, 389, n. 5 (1st Cir. 1974).

Applying these principles to the case at hand, I begin by noting that § 1252(h)(2) imposes broad discretion upon the Attorney General. § 1252(h)(2) does not mandate the Attorney General to deport those aliens who meet the provision's requirements. Rather, the provision merely "authorizes" the Attorney General to immediately deport certain incarcerated aliens. Moreover, in deciding whether to immediately deport an incarcerated alien, the Attorney General must determine whether such deportation is "appropriate and in the best interest of the United States." § 1252(h)(2) (1996).

The scope of the Attorney General's discretion under § 1252(h)(2) is far broader than the scope of the Attorney General's discretion under § 1252(i), which was at issue in *Abreu.* Thus, the fact that I granted the *Abreu* petitioners' request for a writ of mandamus, compelling the Attorney General to fulfill her duties under 1252(i), *see Abreu, supra,* at 54, has no bearing on the issue presented here. While under § 1252(i) the Attorney General has little discretion, under

---

1. The provision upon which petitioners relied provides that, "the Attorney General [through the INS] *shall* begin any deportation proceedings as expeditiously as possible after the date of the conviction." 8 U.S.C. § 1252(i) [emphasis added].

§ 1252(h)(2), the Attorney General has extremely broad discretion. In fact, it is hard to imagine a situation in which the Attorney General exceeds the scope of her discretion under § 1252(h)(2).

Here, however, I need not delineate the scope of the Attorney General's discretion under § 1252(h)(2). It is clear, for the reasons discussed below, that the Attorney General is well within the scope of her discretion in not acting to immediately deport Petitioner.

Petitioner asserts that he is entitled to deportation because: (1) he was convicted of a non-violent offense; and (2) it would be in the best interest of the United States to deport him. To support the latter proposition, he argues that:

> deportation is appropriate and in the best interest of the United States ... This Court certainly noted in *Abreu v. U.S.,* 796 F.Supp., at 51:
>
>> ... "the government wastes precious resources, no [sic] merely government's money, but prison space and personnel attention if aliens must remain in custody when they should have been deported."

Petition for Writ of Mandamus, at 5. However, Petitioner has misquoted this Court's earlier decision. In *Abreu,* I noted the importance of conducting post-conviction deportation hearings in a timely manner so that deportation would occur immediately upon completion of a criminal alien's sentence, thereby precluding the need to continue to hold the alien in custody while the INS conducted the required deportation proceedings. I held that the "government wastes precious resources—not merely money, but prison space and personnel attention—if aliens must remain in custody when they should have been deported immediately *upon release from incarceration.*" *Abreu, supra,* at 55. Thus, despite Petitioner's bold assertion otherwise, it is not apparent that it is in the best interests of the United States to deport Petitioner prior to completion of his prison sentence. § 1252(h)(2) requires that the Attorney General make this determination.

Further, Petitioner's assertion that he was convicted of a non-violent offense borders on the ridiculous. In *United States v. Abreu,* 952 F.2d 1458 (1st Cir.1992), the First Circuit sustained Petitioner's conviction for carrying and using firearms during and in relation to drug trafficking offenses. In so holding, the First Circuit noted that Petitioner:

> bought and used firearms in his cocaine business. In the summer of 1979, Martel sold him a .357 caliber handgun. During that summer Martel also saw [Petitioner] in possession of .22 caliber semiautomatic and .38 caliber handguns. [Petitioner] gave the .22 caliber gun to his workers to use as protection. In the fall of 1979, *[Petitioner] held a sawed-off shotgun to Wilson's face when the two argued about money in connection with drug sales and purchases by Wilson.* Wilson also saw a .38 caliber handgun in [Petitioner]'s Social Street apartment and a .45 caliber firearm on his person.

*Id.,* at 1462–63 [emphasis added]. In light of the above, there is simply no merit to Petitioner's assertion that he was convicted for only non-violent offenses.

In sum, a writ of mandamus is clearly inappropriate in the present situation. The Attorney General has broad discretion under § 1252(h)(2). Moreover, there is nothing to suggest that the Attorney General has exceeded the scope of her discretion by not acting under § 1252(h)(2) to immediately deport Petitioner.

### 3. The Administrative Procedures Act Affords Petitioner No Relief

Under the Administrative Procedure Act, federal courts have the authority to review final agency actions, 5 U.S.C. § 704, and grant relief upon a finding that an individual is "suffering legal wrong because of agency action." 5 U.S.C. § 702. However, for all the reasons set forth above, Petitioner is not suffering a "legal wrong;" he is simply not entitled to immediate deportation. Accordingly, the Administrative Procedure Act affords Petitioner no relief.

### CONCLUSION

Because § 1252(c), as amended by the Act of 1996, does not entitle Petitioner to imme-

diate deportation, and because the Attorney General has not exceeded her discretion under § 1252(h)(2), I must deny Petitioner's request for a writ of mandamus.